UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United Natural Foods, Inc.,<br>    *Plaintiff*,<br><br>    *v.*<br><br>James Hagen and Barclay Hope,<br>    *Defendants.* | Civil No. 3:10cv807 (JBA)<br><br><br>August 13, 2010 |

RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS [Doc. # 25]

As set forth on the record during oral argument on July 15, 2010 (*see* Tr. of Oral Arg. [Doc. # 51]), the Court construed the response by Plaintiff United Natural Foods, Inc. ("United") to the Court's Order to Show Cause as a motion to amend the complaint to drop its wholly–owned subsidiary Albert's Organics, Inc. ("Albert's") as a plaintiff and granted that motion (*id.* at 50); United withdrew Count Three, a claimed breach of duty of loyalty against Defendant Barclay Hope (*id.* at 38); and the Court denied Defendants' Motion to Dismiss on the basis of *Colorado River* abstention (*id.* at 50). Still pending is Defendants' motion to dismiss Count Two, a breach–of–contract claim against Hope, under Rule 12(b)(3), for improper venue, and under Rule 12(b)(6), for failure to state a claim upon which relief can be granted.[1] For the reasons that follow, Defendant's motion to dismiss Count Two will be denied.

I.    Facts

In 1997, United hired Hope to be the General Manager of Los Angeles, California facility of Albert's. Hope held that position until January 2001, when United promoted him to be President

---

[1] Defendants did not move to dismiss Count One (breach of contract against Defendant James Hagen) except on the basis of *Colorado River* abstention.

of Albert's. Two months later, in March 2001, United, at Hope's urging, hired Defendant James Hagen to be the general manager of the Denver, Colorado facility of Albert's. In 2004 Hagen was promoted to be the Vice President of Albert's. When they were both at Albert's, Hagen and Hope worked closely together. Hope left Albert's in December 2006, and five months later, in May 2007, United changed Hagen's position to be Albert's's Purchasing Manager. (*See* 2d Am. Compl. at ¶¶ 7–14, 18, 22.)

According to United, both Hagen and Hope had access to its trade secrets and confidential information while employed by United and Albert's, including information regarding its suppliers, existing customers, and potential customers who were the subject of its solicitations. When Hope ended his employment with Albert's in December 2006, he, Albert's, and United executed an Employment Termination Agreement and Release (the "Hope Agreement"), which Hope signed on December 6, 2006 and United and Albert's signed on December 12, 2006. (*See* 2d Am. Compl. at ¶¶ 18–21.) The Agreement contains four relevant provisions. First, the Hope Agreement contains a nondisclosure provision (the "Confidentiality Provision") that states, in pertinent part:

> Mr. Hope shall not knowingly use for his own benefit or disclose or reveal to any unauthorized person, any trade secret or other confidential information relating to [Albert's], or to any of the businesses operated by it, including, without limitation, any customer lists, customer needs, price and performance information, . . . or other information relating to the business of [Albert's], and Mr. Hope confirms that such information constitutes the exclusive property of [Albert's]. Such restriction on confidential information shall remain in effect until such time as the confidential information is (i) generally available in the industry through no fault of Mr. Hope or (ii) disclosed by the Company in published literature. Mr. Hope agrees that he will return to [Albert's] any physical embodiment of such confidential information upon the Termination Date.

(Hope Agreement at ¶ 8(a).) The "Termination Date" is December 8, 2006. Next, the Hope

Agreement contains a covenant not to compete (the "Non–Compete Covenant") that states, in pertinent part:

> [D]uring the period commencing on the date of this Agreement and ending December 7, 2007, Mr. Hope shall not engage, directly or indirectly . . ., anywhere in the United States in the wholesale distribution of natural foods[.] . . . Further, during such period Mr. Hope shall not act to induce any of [Albert's's] vendors, customers or employees to take action which might be disadvantageous to [Albert's].

(Hope Agreement at ¶ 8(b).) The Hope Agreement also contains a choice–of–law provision that states that the Agreement "is made pursuant to and shall be governed by the laws of the State of Connecticut, without regard to its rules regarding conflicts of laws." Finally, the Agreement contains a forum–selection clause that provides that "[t]he parties agree that the courts of the State of Connecticut, and the Federal Courts located therein, shall have exclusive jurisdiction over all matters arising from this Agreement." (Hope Agreement at ¶ 14.)

Hope served as an independent business consultant, including in the produce industry, for two and a half years following his departure from Albert's, until May 3, 2010, when he became the Chief Executive Officer of Freshpack Produce, Inc. ("Freshpack"), which United alleges is "a direct competitor of [United] in the natural foods industry." Freshpack hired Hope as its CEO even though Hope lives in California and Freshpack's operations were based in Denver. Prior to his May 3, 2010 official start–date as CEO, Hope recommended that Freshpack hire Hagen, who was based in Denver, to be its Chief Operating Officer, and Freshpack followed Hope's recommendation. Hagen's last day of employment with Albert's was April 30, 2010, when he resigned without notice, and Hagen began working as Freshpack's COO the following Monday, May 3, 2010—the same day Hope started as CEO. (2d Am. Compl. at ¶¶ 23–24.)

3

According to United, "in late 2009 and early 2010, Hope, Freshpack, and other affiliated entities devised a detailed plan to raid [United's] trade secrets and employees to enable Freshpack to obtain significant advantages in competing against [United]," and Hagen's ability to provide information "from inside [United] were key elements of this plan." Pursuant to this plan, in February through April 2010, Hope contacted Hagen—who at that time was still employed as Albert's's Purchasing Manager—and solicited him to come work at Freshpack and "urged him to send Hope [United's] confidential and proprietary information." Hagen obliged: in March and April 2010 "Hagen sent numerous emails to Hope to which he attached files consisting of [United's] trade secrets and confidential information." From United's and Albert's's internal computer systems Hagen generated reports listing information about Plaintiffs' customers, customers' orders, operations, finances, trade secrets, confidential information; sent that information to himself and Hope; and made hard copies and electronic copies of that information. (2d Am. Compl. at ¶¶ 25–39.)

II.     Standard

The Federal Rules of Civil Procedure require that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants' motion to dismiss challenges United's Second Amended Complaint for "improper venue," Fed. R. Civ. P. 12(b)(3), and for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6). Summarizing the two recent Supreme Court cases addressing Rules 8(a)(2) and 12(b)(6), *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Second Circuit has explained that "[a]s a matter of substance, to survive a

4

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kuck v. Danaher*, 600 F.3d 159, 162–63 (2d Cir. 2010) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

III. Discussion

Defendants first challenge the contract claim against Hope under Rule 12(b)(6). At oral argument United conceded that the "express time period on th[e] non–compete," which ran from December 8, 2006 through December 7, 2007, "has passed." (Tr. at 18.) Because the Second Amended Complaint does not allege that Hope improperly competed with Albert's or United during that "express time period," no claim may be raised in this action against Hope for breach of the Hope Agreement's covenant not to compete.

The parties dispute whether the Hope Agreement contains a similar temporal limitation on claims for Hope's breach of the Confidentiality Provision. United asserts that the Non–Compete Covenant's time period is inapplicable to the Confidentiality Provision. The Court agrees. The Non–Compete Covenant and the Confidentiality Provision are two distinct provisions of the Agreement, and the one–year limitation is contained within the Non–Compete Covenant and relates only to the activities restricted by that covenant. By contrast, the Confidentiality Provision contains its own temporal limitation, which provides that its "restriction on confidential information shall remain in effect until such time as the confidential information is (i) generally available in the industry through no fault of Mr. Hope or (ii) disclosed by [Albert's] in published literature." Thus, the timeliness of a claim that Hope breached the Confidentiality Provision turns

5

on whether the information Hope allegedly wrongfully used was available or published at the time he used it; the timeliness of such claim does not turn on the specific date on which he used it. Defendants counter that the next sentence, which obligates Hope to "return to [Albert's] any physical embodiment of such confidential information upon the Termination Date," that is, by December 8, 2006, implicitly means the Confidentiality Provision expires on December 8, 2006. Defendants' reading would mean the confidential provision expired just two days after Hope signed the Agreement on December 6th, and four days *before* Albert's and United signed the Agreement on December 12th. Defendants' reading would render the confidentiality provision a nullity upon execution, *see, e.g.*, *United Illuminating Co. v. Wisvest–Connecticut, LLC*, 259 Conn. 665, 674 (2002) ("The law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous."), is unnatural in light of the provision's more obvious temporal limitation (*i.e.*, that the provision expires when the information becomes public), and is rejected.

The parties also dispute whether the Confidentiality Provision protects information that was *not* in Hope's possession on December 8, 2006. Again relying on the last sentence of the provision, Defendants assert that the only reasonable reading of the provision is that it refers only "to information that was in the possession of Mr. Hope while he was employed at [Albert's]," and therefore that the provision "cannot be read to bar him from any particular use of [Albert's] information that Mr. Hope might obtain four years after leaving [Albert's]." (Defs.' Mem. Supp. at 17 (emphasis omitted).) The Court disagrees. The last sentence of the Confidentiality Provision required that when Hope walked out of Albert's's doors for the last time on December 8, 2006, he turn over any tangible items then in his possession that contained confidential information; but that

6

sentence does not imply that Hope did not have confidential information in *intangible* form, or that after December 8, 2006 Hope would be unable to obtain confidential information in tangible or intangible form. The Confidentiality Provision in fact contains no such limitations, and Hope's confidentiality duties extend to the alleged circumstances at issue here: the Confidentiality Provision bars Hope from using any confidential information, whether or not it existed in December 2006, whenever and however obtained, at any time, for any purpose including for his own "benefit," that is, including as a consultant for or employee of an entity other than Albert's or United. Giving effect to the Agreement's terms, the Court concludes that the Confidentiality Provision is not limited in application only to confidential information in Hope's possession on December 8, 2006.

United alleges that Hope knowingly used for his own benefit information that he knew to be Albert's's confidential information that had not become public. If these allegations are true, Hope has breached the Confidentiality Provision of the Hope Agreement. Because the Confidentiality Provision has not expired, United, which is a party to the Hope Agreement, has stated a valid claim for breach of contract by alleging that Hope breached that provision. This claim will therefore not be dismissed under Rule 12(b)(6).

Defendants also argue that the forum–selection clause is unenforceable.[2] They rely on "[t]he fourth, and final, step" in the determination of "whether to dismiss a claim based on a forum selection clause," which "is to ascertain whether the resisting party has rebutted the presumption

---

[2] In addition, Defendants assert a timeliness argument, similarly unavailing, regarding the forum–selection clause. They argue that the entire Agreement, including the forum–selection clause, expired on December 7, 2007. However, the forum–selection clause contains no expiration date or temporal limitation at all.

of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383–84 (2d Cir. 2007) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)). At the fourth step,

> a forum clause is enforceable unless (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Id.* at 392. None of these bases provides a ground on which to decline to enforce the Hope Agreement's forum–selection clause. First, Defendants make no claim that the *incorporation* of the clause into the Agreement was fraudulent or the result of fraud. Second, by focusing on Colorado's policy against enforcement of non–compete covenants, *see* Colo. Rev. Stat. § 8-2-113(2), Defendants misconstrue the nature of the contract claim against Hope, which is for breach of a confidentiality provision, not a covenant not to compete. In addition, Defendants' argument about Colorado and Connecticut law also conflates the question of which State is the proper *forum* with the question of which State's *substantive law* will be applied to interpretation and enforcement of the Agreement. Defendant makes no showing that Colorado and Connecticut employ materially different choice–of–law analyses when determining whose substantive law governs disputes arising out of contracts containing choice–of–law provisions.[3] Defendants also do not argue that there exists any

---

[3] *Compare Zenon v. R.E. Yeagher Mgmt. Corp.*, 748 A.2d 900, 903, 59 Conn. App. 316, 321–22 (Conn. App. 2000) ("apply[ing] the substantive law of Massachusetts to decide" claims based on a contract containing choice–of–law provision requiring application of Massachusetts law), *with URS Group, Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380, 384 (Colo. App. 2008) ("apply[ing] New Jersey law in analyzing the contract claims in [a] case" involving a contract containing a choice–of–law

8

"strong public policy" in Connecticut that would be "contravene[d]" by enforcement of the forum–selection clause. Finally, although Hope lives in California and works for a Colorado company, the fourth factor does not require that the Hope Agreement's forum–selection clause be found unenforceable, since this Court in Connecticut may decline to enforce a forum–selection clause only where litigation in the selected forum would be "impossible," and not merely "more costly or difficult." *Phillips*, 494 F.3d at 393. If "the obvious concomitants of litigation abroad" do not render a forum–selection clause unenforceable, *id.*, certainly the concomitants of domestic litigation across the country from California do not render the Hope Agreement's forum–selection clause unenforceable, particularly because "the courts of this circuit have emphasized that a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel," *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10–11 (2d Cir. 1995) (holding forum–selection clause requiring litigation in Greece enforceable against United States citizen (brackets and internal quotation omitted)); *see also Phillips*, 494 F.3d at 393 (holding that litigation in England would not be "impossible" for a party even where "none of his witnesses, documents, or any parties to the action are located in England").

The federal courts have "twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum." *Phillips*, 494 F.3d at 393. In this case, both commitments favor enforcement of the Hope Agreement's forum–selection clause. Because the clause is enforceable, venue lies in Connecticut for Count Two.

---

provision requiring application of New Jersey law).

9

IV.     Conclusion

For the reasons stated above, Defendants' Motion to Dismiss [Doc. # 25] is DENIED as to Count Two (breach of the Hope Agreement).  United is directed to file its Second Amended Complaint forthwith.[4]

IT IS SO ORDERED.

  /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of August, 2010.

---

[4] Despite having been given leave to file the Second Amended Complaint proffered in response to the order to show cause (*see* Proposed 2d Am. Compl. [Doc. # 45] at 5–15), United has not yet filed that complaint.